07-7066, Iracheta against the Department of Veterans Affairs, Mr. Valdez. Mr. Valdez, with this report, would it be possible for me to present these documents to the panel at the same time you are presenting these documents to the public? Mr. Valdez, with this report, would it be possible for me to present these documents to the panel at the same time you are presenting these documents to the public? Mr. Valdez, with this report, would it be possible for me to present these documents to the public? Mr. Valdez, with this report, would it be possible for me to present these documents to the public?  Well, once in a while we get a foul ball, and we get a baseball bat. Your Honor, what happened in this particular case is that we are dealing with a psychiatric case. And also, Your Honor, we are dealing with a condition where the individual is discouraged from soliciting the benefit from the Veterans Administration. He is sent out to the community. So every time he comes to the Veterans Administration, he is discouraged. He is sent to the local community. So that is an indication. One individual is a psychiatric case. He doesn't know, Judge. The government pretends that it is a friendly system. Your Honor, it is not a friendly system. And that is the indication here that they are filing us... Well, but he is the one who is describing his symptoms. And he is the one who says, I have no depression. I have no insomnia. Those are completely inconsistent with a dating back of that claim to 1985. Well, Your Honor, see, that is... So don't we have to stick with the statute that says the effective date of a claim is the date on which it is filed? How do you get that? Yes. Well, Your Honor, what happened is that it is a trend. That is what I am trying to do here. In 1985, he is discouraged from claiming benefit from the Veterans Administration. In 1992, or thereafter, he goes to a civilian physician, treating him for that condition because the Veterans Administration doesn't want to treat him. So, what happened here is that all of a sudden, there is a gap. So, what is a friendly atmosphere? He said, you are not entitled to benefits here. Go to the Brady Green Clinic in San Antonio. And from there, he goes to Dr. Belvis. Now, Judge, what happened in all these situations here is that he goes back to the Veterans Administration. There is a gap, but Dr. Belvis makes a report and this individual is disabled. At one particular time, Dr. Belvis says, he has PTSD. And the Social Security Administration, another aspect, and I have a case law in my stack in Exhibit 2, the Social Security Administration finds him disabled. Completely, totally disabled. So, he continues with a disability from the Veterans Administration. The Exhibit 2 judge deals with what the Social Security Administration calls retrospective medical diagnosis. We are dealing with a PTSD. We are dealing with an individual that, in my, I think, perhaps Dr. Smith in the Exhibit number 10, describes the condition. This is an insidious condition that even the individual doesn't know he has it. So, why was he able to file a formal claim in 1992, but not in 1985? Well, that's a beautiful question. That is exactly what I was trying to say. Yes, he was filing in 1992. Now, he is oriented. Now, the Social Security Administration benefits are ending. Now, he has the guidance of the physician, Dr. Belvis. Now, he has the guidance of another physician that treated him. So, now he's oriented. He's been getting medication since 1985. Yes, that is correct. So, now he's going back to the Veterans Administration and seeking that. And that is one of the enclosures that I have, Judge. That in 1995, he presents the claim. And then, also in 1996, they say he's not well-grounded. So, he's fighting the system. And the poor man is completely disoriented as to where to go. And fortunately, Judge, this case, the Exhibit No. 2 from the Fifth Circuit, that's where I practiced, talks about retrospective medical. Because all the physicians, Dr. Belvis, Dr. Crump, by the way, what evidence did you put into the record about his inability to file a claim in 1985 that his mental disability prevented him from doing it? What evidence did you put into the record to that effect? Well, my emphasis there, my emphasis in that particular instance was to identify in the record that at that particular time, he was a psychiatric condition. And that was the first time that I was able to find in the record. So, there's no evidence other than the very existence of the condition which suggests that he was unable to file a claim in 1985? Yes, Your Honor. Yes, Your Honor. And then, another thing that doesn't make any sense, Your Honor, is that the Veterans Administration here, the same Veterans Administration, is talking in 2005 that when they accepted the case from the civilian, they said that he has PTSD. So, he ran out of benefit from the Social Security Administration, and now he's going back to the Veterans Administration. The Veterans Administration says, you have been receiving medical care for PTSD from Dr. Veldez since 1994. And what happened, Your Honor, is that that definition of any communication or action indicating an intent to seek medical, to file a claim. Another document, Your Honor, that is part of my stack of documents, is also a letter presented by the claimant in 1992 where he, 1994, Your Honor, November 1994. And he also, that is a formal claim that he has. So, perhaps 1985, Your Honor, is not the proper date for the claim. But then, down the road, so, he filed a claim based on the system. But what date has been established that you don't have to worry about? What is the date which was accepted by the VA? I think it's from the very first when Dr. Veldez received him, and Dr. Veldez testified, or wrote a report, that he has been receiving health care for PTSD since 1994. I think we have that. But, Your Honor, the last enclosure exhibit that we have is a beautiful summary of these insidious conditions. And the case from the Veterans from the Fifth Circuit describing how critical this PTSD condition is, the individual doesn't know about it. And then, by the way, Your Honor, the government is talking about that he did not say anything about his condition in 1995. He's not a physician. He's not a health care provider. And this condition gets worse and worse and worse. So, who is the proper person to diagnose him? Dr. Veldez? Dr. Smith? Dr. Croft? So, if the condition gets worse and worse and worse, maybe he was mentally competent to file a claim in 1985, since he was able to do it later. Your Honor, he was looking for assistance, help on that. May I say something? He was looking for help to do that. And he was against the wall when he ran out of resources from the Social Security Administration and the public. How were we to deal with the record that shows him disclaiming any depression or anxiety? He's complaining only about insomnia. So, he's going for treatment for insomnia. How are we to conclude when the veteran himself is saying, I have no anxiety, I have no depression? Your Honor, I'm glad. Your Honor, insomnia is a condition of PTSD. The fact that he denies other conditions, that doesn't mean that he doesn't have the other symptoms of PTSD. So, and we are dealing with an individual who has 8th grade. And we are dealing with an individual that is not the most intelligent from that aspect to describe his symptoms. So, and another thing, Your Honor, is that part of the PTSD, you isolate yourself. You don't want to open up. You don't want to talk to anybody. And that is a condition that we found here. And that is why it's so important to thank Dr. Valdes' record that he's a treating physician. When did he start being represented? Your Honor? When did he start being represented? Oh, he was represented before, Your Honor, by the Veterans Law Center. Yes, sir. When did that start? No, I don't. I cannot tell you with precision when that started. But I think. Let's hear from the VA, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Hawthorne? May it please the Court? First, I think in the board decision attached to our brief, Judge Dyke, it indicates that the American Legion represented him before the board. I don't know anything else about prior representation to that. And actually, his representative didn't put in any evidence that he was unable in 1985 to follow formal and informal planning. We have not seen any evidence of that type. Can you repeat? Pull that closer. The evidence that is in the record before the Court, barring the evidence that was provided this morning, which I formally would like to object at this time, consisted essentially of some 1985 medical reports that Judge Rader discussed earlier in which the individual visited a VA clinic for purposes of getting some kind of medicine for a sleep disorder, insomnia. And during the interview, the records plainly show that he denied any depression or anxiety related to the insomnia. Let's just assume, for the sake of the question that I'm about to ask you, that here is a veteran who is not overly educated. He has these consequences of military service. And he's not inside the system. He doesn't know that you have to perform this technicality of filing an application before you can even argue about whether you're entitled and from which date you might be entitled to whatever compensation for whatever service-connected illness you have. And that's what happened here without knowing the merits of how seriously disabled this veteran was in 1985. It took a while before things got to the point where either through proper legal representation or worsening of the condition or whatever else, he goes through this technicality and he files the application. Having done so, the disability is recognized and we're not worried about what happened thereafter. We're just worried about what happened beforehand. Now here we supposedly have a veteran-friendly system, and yet the position that we're confronted with is, as we've observed, the statute says that you have to file an application. Otherwise, how do we know that there's anything going on that the VA should worry about? And yet we're supposed to have a system that extends itself to help the veteran. So what are the courts and what does the system do? Is there flexibility? Does the VA have the authority and ability to look back at these old medical records and say, yes, obviously this veteran was suffering from PTSD in 1985. He just didn't go through the formalities. Or is that something that the government's position is forbidden no matter how strong the evidence? I think the VA is to find the circumstances in which medical records can be examined for purposes of determining an earlier effectiveness date, and that's 3.157. Even without filing the application? 3.157. No, 3.157 only applies after a claim has been filed and, indeed, service-connected. So it's more that you're talking about whether it's equivalent to the filing of the claim? The veteran has to file the claim. The VCAA specifically provides that upon the claim submission, the VA's duty to assist will, after that, determine that it's non-frivolous. But what about the retroactive effect? Of course, you can't provide assistance if you aren't asked for assistance. That's easy enough. Exactly, and in this case, there was no request for assistance. The request that came in 1985 was simply for some sort of sleep medicine that he could have so that he could get through the night. But what about the retroactive effect? Is there a possibility of a retroactive effect once the claim is officially filed? In this case, no, but I'll provide you a hypothetical situation. If we adjust the facts of this case, which would have that situation occur. Assuming for purposes of this argument that in 1995, when he did submit a formal claim for a mental disorder, that the claim was service-connected, but that the VA determined that the present disability at the time, in 1995, did not materially affect his ability to gainful employment. And so they rated his condition at 0%. In other words, he's service-connected. They identified the fact that he has some type of mental disorder and that it relates to an incident in service, but that its present effect on his ability to work doesn't rise to the level where he's entitled to compensation. In 2002, but there's medical records in the case. I'm trying to think how I can finish this. Well, we'll use some of the facts here, at least, as they fit in here. We have a pretty good medical history of problems before the formal claims. The problem is that 3.157 requires this earlier finding of service connection, if you will, and using the term service connection in this case to apply to all three of the service connection problems. Let's suppose that, you know, I think you've got a good argument that he hasn't come under either of these informal claim regulations. Let's assume that we have a situation in which he puts in evidence that he was mentally disabled in 1985 and was unable to file a formal or an informal claim, but that later his condition improved sufficiently so that he was able to file a claim. And he's saying I should, under these circumstances, get retroactivity because my condition prevented me from filing the time and way so I should get an earlier effective date. What's the VA's response to that? I know that's not this case. I understand. It sounds, I mean, my first reaction to that, Your Honor, is it sounds like we're getting close to the Barrett equitable tolling line of cases. And my response, of course, would be, as we've cited in our brief, McKay and Andrews as well, in which this court held that principles of equitable tolling don't apply to the earlier effective date statute of 5110. So that's how I would initially respond to that. But what are we tolling? There aren't any deadlines that have passed. I believe Judge Blake's hypothetical sort of assumed that there was some reason why he couldn't do something earlier on related to his medical condition, and that sounds a little bit like what Barrett. So he got competent legal advice, never mind whether his medical condition improved. Let's say he finally got someone who knew their way around the system and said you've got to file a claim. And he does. He files a claim. I mean, the VA is required to examine a claim once it receives a claim. But the VA is not required by statute, in fact, it's not allowed by statute, 5110A, to pay benefits to a veteran who hasn't filed a claim. So your answer to Judge Newman's hypothetical and my original hypothetical is the same, that there's nothing the VA can do about it. If he was disabled from filing earlier, that's just too bad. 5110A says that the effective date is the date as found by the facts of the case or the date of the submission of the claim, whichever is later. So that ties the agency's hands as far as giving these earlier effectiveness dates. Now, there are some exceptions to that, one of which is 3.157, which I think as we've demonstrated in our briefs and discussed so far today, doesn't apply because he doesn't have, in 1985, he didn't have a previously service-connected claim, and in 1995, his claim was determined not to be service-connected specifically. In fact, he was awarded a non-service-connection pension. And the reason it was determined not to be service-connected was because the report that's been mentioned over and over here, Dr. Belvis's 1995 report, which is his private treating physician, specifically found that his mental disorders stem from his on-the-job injury and completely discounted any service-connection aspect to it, as the report plainly provides under Mr. Bruchetta's brief after Appendix F. The doctor said he gave a history of hurting his neck in the military, but apparently has been able to recover from that. He states that he started working for the VA hospital, where he fell off a ladder and hurt his cervical, lumbar, and thoracic area, and his claims relate to his... At that time, the claim was stated as a mental follow-up, if you will, or a secondary aspect to the claim of falling off the ladder, which is not a service-connected incident, and in fact isn't described as such by his own treating physician in 1995. So the claim was properly denied. Again, I mentioned he did receive pension, a non-service-connected pension, which is an addition here. But there's nothing that we could cite to either statutorily or regulatory that would allow us to go back to the 1985 hospital visit in which he asked for some sleeping medicine. And in 1995, actually you have a claim submitted seeking service-connection, which was denied. I might note, in preparing for this argument, it's unclear whether the issue of an effective date going back to 1995 is really properly before the court, as it appears to suffer from the lack of a Q claim on that issue. The Board addressed a Q claim with respect to Q in the 2002 decision, but not a Q claim with respect to the 1995 decision. But even if this Court were to treat as having been filed a 1995 Q claim, as we explained in our briefs, the real issue that is raised is a failure to assist. To what extent do we even have jurisdiction to look back at this 1985 report and look at the fact of whether or not he invoked anxiety and depression or not? This Court in Rodriguez, I think, covered all the bases, if you will, on what the Court can and cannot do with respect to 3.157 in an argument with respect to 3.157. And the Court could look at whether or not 3.157 was properly interpreted, as it was in this case, but could not, as this Court said in Rodriguez, determine whether, in a particular case, the facts of whether or not an informal claim was filed could be reviewed. Indeed, this Court specifically held that it would not. So we wouldn't really have authority to look into whether he was competent at the time to file a claim or not, or whether or not the record showed that he was competent, or whether or not he had anything in the record to suggest he could or could not file a claim. That would all be pre-factual, right? I believe, yes. Ultimately, if the Court were to go down that road and ask questions about his competency, the ultimate or the initial decisions and the ultimate decisions, if you will, with respect to whether he's competent would lie below with the Board and be reviewed under clearly running standard by the Veterans Court. But this Court wouldn't have the ability to apply law to the facts of the case. But doesn't your answer depend on whether or not there was an issue of service connection? I mean, if there is an outstanding, unresolved question underlying all of this of service connection, whether it's decided retrospectively, or whether the benefits can retrospectively be awarded, at least in 1985 when the medical records start to mushroom. But that's not something that can't even be looked at, is it? Well, I mean, the question of whether retrospectively someone can go back and determine a service connection seems to me to fall into the Q category. So that the issue, I guess— Well, you're asking an unrepresented veteran, not highly educated, who doesn't know the system to understand all about Q and the other technicalities that even experienced lawyers, in my observation, don't fully comprehend. Well, I can't speak to the type of representation Mr. Verchetta or any other type of veteran might receive from any of the veteran services that are at the VA hospitals or any of the distinguished members of the VA bar that appear before this Court. But in this case, and I assume in your hypothetical, Your Honor, you're suggesting that there was never a claim filed until some later date. No, I'm really trying to understand here, putting the veteran's appeal here, in the light most favorable to the veteran. He says, I had these problems. I didn't know what to do. I was mentally disadvantaged, psychiatrically injured, and I finally—and I went to all these doctors because the VA said they couldn't help me. And finally, in 1995, we got it all straightened out. However, I had all these problems earlier. They were service-connected. I am post-traumatic. It was in Vietnam. All the things that were being told, for which there is no contrary argument, so we accept them at their face value. And to understand what's available to such a veteran through the courts, from the VA, what the VA will do on its own, but what the courts must oblige to be done. Well, I mean, that through-the-courts thing is the problem because I think that the remedy, if any, may lie with Congress. In Act 5110, Congress specifies exactly how effective date determinations are made and provides those exceptions to the claim submission date that Congress has deemed available to the veteran community. And in this case, none of those exceptions are available, so there's nothing this court or the VA court can do to extend the type of relief that Mr. Richetta is seeking in this case. Relief that, despite the fact that he may have been treated for something, and I must specifically note that in this case, I don't think the evidence shows that at all. I think that in 1995, his own doctor suggested that there wasn't a service-connectable injury that he was suffering from. Well, of course, there's a connection. There's a question on his own, perhaps. I understand. And assuming that there was, but yet he doesn't file a claim, I'm not aware of anything this court can do, short of ignoring the plain language of Congress in 5110 in determining that the claim submission date is the date for the effective date. Well, but it's not necessarily that plain because the question is whether Congress was intending to deal with the situation in which the veteran was incompetent. And I don't know how the statute should be read, and maybe that this issue is not properly presented in this case, but it doesn't seem to me to be a frivolous issue to suggest that the broad language of the statute should be interpreted as not setting a deadline for incompetent veterans. Again, Your Honor, I mean, the statute says what the statute says, and if the court wants to try to extend benefits to the individual despite what the statute says, it would seem to me that the remedy is more equitable in nature. And that goes back to my earlier comment with respect to McKay and Andrews. This court's already determined that 5110 is not susceptible to equitable principles. So I still think that the remedy is with Congress. Okay. Any other questions? Thank you, Mr. Hockey. Mr. Valdez. Your Honor, what bothers me is that we have veterans, and we have a series of veterans like Ms. Ayala Cheta out there,  and wants to send him out. Ms. Ayala Cheta, from the beginning, is seeking help. Your Honor, personal experience, he comes to me, and he's afraid of everything. He's afraid of the Veterans Administration because they discourage him from going to the Veterans Administration. And so they say that he did not file claims. Your Honor, if we look at the definition of informal claims, any communication. So when Dr. Valdez and the other physicians send a letter to the Veterans Administration, that is part of communication. When Mr. Ayala Cheta goes to the hospital, they have a duty to assist him. And so they relinquish it. They say it's a friendly. Well, it's not a friendly type of environment. And now, Judge, the same document from them, they say here that in 2001, from the Veterans Administration, they say he came here and he has been receiving care in the outside. This is the Veterans Administration. He goes there for help. I'm sorry, Judge. Do you have any questions for me? We're near the end. I think we have the picture. Is there anything else you need to tell us? No, Judge. I think Mr. Ayala Cheta is out there and he needs help. And then the Veterans Administration finally accepted his condition. But he is a poor man. He cannot work. And the Social Security Administration recognized that a long time ago. So the poor Mr. Ayala Cheta. And what is interesting is that the Veterans Administration, Your Honor, goes and reviews the Social Security and they discard it. They say it's not valid. Well, it is valid because they're saying it's a very severe condition. They're not talking about a mild condition. This is a totally disabled person. And the Veterans Administration and the Social Security are supposed to be working together. Well, the Veterans Administration ignores the Social Security. I think that is so unfavorable. And what happened is that we're dealing with a big bureaucracy, Your Honor. And I understand. I used to be in the military. I understand. They move from one place to the other. And sometimes they're understaffed. But Mr. Ayala Cheta is the one that has been picked. Thank you, Your Honor. Okay. Thank you, Mr. Valdez, Mr. Hathi. The case is taken into court.